## GRAVES v. BURCH.

(No. 916; Decided June 3rd, 1919; 181 Pac. 354.)

BILLS AND NOTES—EXTENSION—CONSIDERATION—MORTGAGES—FORE-CLOSURE—DEMAND—ATTORNEY'S FEES—EQUITY—SUFFICIENCY OF TENDER—INTEREST.

1. Where the maker of a note and mortgage past due informed payee by telephone that she would borrow money and pay him if he desired, and he replied that he did not need the money and that she should not worry herself about it, there was not a definite extension of time of payment, nor consideration sufficient to make a binding extension.

2. No previous demand is necessary to authorize a suit to recover upon a note and mortgage past due.

3. A previous demand for payment of a past due debt is not generally necessary to a recovery of attorney's fees provided for in a note or mortgage.

4. A provision for attorney's fees in a note or mortgage is a contract of indemnity in the nature of a penalty, as distinguished from liquidated damages, to compensate payee

for expense incurred or liability for expense created through the fault of the maker or mortgagor. Such fees even where fixed by stipulation for a stated amount are within the equitable control of the court to allow only such sums as may be reasonable and may be disallowed altogether under circumstances rendering a recovery inequitable or unconscionable.

5. Where the payee in a note secured by mortgage past due lulled the maker into a sense of security by stating that he was not needing the money and that she need not worry about the payment, it would be inequitable to allow the recovery of attorney's fees provided for in the note, where foreclosure proceedings were brought without further notice, giving the debtor an opportunity for payment; mortgagee upon suit being brought tendering the amount due.

6. Where a payee in a note secured by a mortgage was not equitably entitled to attorney's fees, having lulled the maker into a sense of security by informing her that there would be no immediate foreclosure, an assignee of the mortgage and note after the note was overdue, took them subject to the equities existing at the time of the assignment and was not entitled to attorney's fees where he immediately brought suit to foreclose without notice.

7. In an action to foreclose a mortgage, the principal of which was payable in monthly installments, some of which were not made promptly, which rendered computation of interest difficult, a tender of the amount demanded, in a petition for forclosure, with interest to date and court costs, will not be held ineffective, although more money was actually due, the difference being deposited in court upon amendment of the petition by plaintiff; and a tender and deposit in court will not be held insufficient, although lacking a few cents to cover the exact amount, where the only controversy in the case was as to whether plaintiff was entitled to attorney's fees.

8. In a mortgage foreclosure, where mortgagor made a tender and deposit in court of the amount demanded in the petition, together with interests and costs to date of deposit, but it was found that plaintiff had erred in computing the interest, leaving a difference, which the defendant at once deposited, the defendant should not be required to pay interest upon the amount originally tendered and deposited.

ERROR to District Court, Fremont County, HON. CHARLES E. WINTER, Judge.

Action for the foreclosure of a mortgage by I. L. Burch against Cora E. Graves and another.

From a judgment for plaintiff which included an allowance of interest and attorney's fees after tender, defendants bring error.

*E. H. Fourt,* for plaintiffs in error.

Plaintiffs in error offered to make payment before suit and were informed that they need not worry about payment, as mortgagee did not need the money. Mortgagor thereafter assigned the note and mortgage to defendant in error, who commenced foreclosure proceedings; a tender of the amount due less attorney's fees was made at the time of answer; the note was past due on the date of assignment; defendant in error is not a holder in due course. (Comp. Stats., sec. 3216.) A court of equity will relieve against a forfeiture or penalty in a contract and decree specific performance, if possible, between the parties. (Willard's Equity 56.) Defendant in error having accepted the note after it was due gave it the status of a demand note. (Comp. Stats., sec. 3165.) A demand was necessary in order to recover attorney's fees provided for. Attorney's fees are a penalty. (Witherspoon v. Mussleman, 14 Bush. 214; Prescott v. Grady, 27 Pac. 35 (Calif.).) An attorney fee cannot be included until a demand has been made. (Clemens v. Loose, 35 Pac. 1032.) There was an extension at the time. (Drake v. Bank, 96 Pac. 999.) There was no waiver of the terms and conditions of the note.

*John J. Spriggs,* for defendant in error.

The tender was insufficient and properly refused. The services of an attorney was necessary to enforce payment, there being a default. A tender which does not include attorney's fees is insufficient. (Bank v. Howard, 158 Pac. 927.) Attorney's fees are not held to be uncollectable. (Bovee v. Holland, 156 Pac. 417; Const. Co. v. Sutherland,

150 Pac. 209; Comp. Stats., sec. 3160; Baker Co. v. Sherman, 122 Pac. 235.) Presentment and demand were waived in the note. (Section 3240, Comp. Stats. 1910.) Section 3165, Comp. Stats., refers to persons secondarily liable and are not in point. The instrument was not one including a drawer or acceptor and was not drawn, issued or accepted after due. It was endorsed after due and as to the endorser was payable on demand. The judgment should be affirmed.

POTTER, JUSTICE.

This is an action upon a promissory note and real estate mortgage securing the same, executed by the plaintiffs in error, Cora V. Graves and Karl DeF. Graves to one John Findlay and assigned to the defendant in error, I. L. Burch, to recover judgment upon the note for an unpaid balance due thereton and for the foreclosure of the mortgage. The note and mortgage were assigned to Burch on March 10, 1916, and the action was commenced on the following day, March 11, 1916, and there was endorsed on the summons, as demanded by the precipe, the following: "Civil action for the recovery of money only. Amount claimed, $314.46, and mortgage foreclosure, for which plaintiff will take judgment if defendant fails to answer."

As set out in the petition and shown by the evidence, the note was dated October 4, 1910, and was given for the sum of $800.00, with interest at the rate of ten per cent per annum from date until paid, payable by monthly installments of twenty dollars each until the principal sum and interest shall be fully paid. It expressly provides that the monthly payments shall be applied, first to payment of accrued interest, and the balance upon the principal. It contains also the following provisions: "In case payment shall not be made at the times and as herein provided, we further promise and agree to pay costs of collection, including the further and additional amount of one hundred dollars on said principal sum of this note for attorney's fee, and if any suit or foreclosure proceedings be commenced for the collection of any amount unpaid on this note, said fees shall

be added to and included in any judgment hereon. And the makers of this note hereby waive presentation for payment, notice of non-payment, and jointly and severally consent that time of payment may be extended without notice thereof." The mortgage also contains a provision for one hundred dollars attorney, solicitor and counsel fees to be retained out of money arising from the sale of the property authorized thereby upon default in payment of principal or interest or any part thereof, and that in any proceeding in equity to foreclose the mortgage said solicitor fees shall be taxed as costs in said action.

The petition alleges a large number of payments endorsed on the note, and the dates thereof respectively commencing with Oct. 31, 1910, as the date of the first payment of $20, and ending with the payment of a like sum on Oct. 12, 1915; said last payment being endorsed as the payment due for February, 1914. Judgment was prayed for $174.21, the balance due upon the principal of the note, $37.00 interest due at the date of commencing the action, $3.25 for insurance premium paid, and the further sum of $100.00 for attorney fees; and for the sale of the mortgaged premises to satisfy the same. It will be noticed that the total of the sums stated is $314.46, the amount endorsed upon the summons, and that, omitting the attorney fee and insurance premium, the amount claimed would be $211.21.

The answer, filed April 7, 1916, admits the execution of the note and mortgage, and alleges that after the note became due and before it was assigned to plaintiff, the defendants obtained an extension of time for the payment of the balance due, that the payee, Findlay, told them that no advantage would be taken of them or expense incurred and that they might have additional time to pay the balance, and that relying on that promise, and in consideration thereof, the defendants "made additional payments as they could". That defendants were not notified of the assignment and no demand for payment was made upon either of them prior to commencing the action. That the plaintiff knew the note was past due when assigned to him. That the assignment

was a breach of faith and a fraud upon defendants. That on March 28, 1916, the defendants tendered to plaintiff the sum of $225.00, being the amount due upon the note with court costs to that date, which tender was refused by the plaintiff, and that the defendants tender said sum into court, being all that is due at the time of filing the answer. That the commencement of suit without demand or notice is "vexatious, unconscionable and inequitable and the defendant (plaintiff) ought not to be permitted to obtain any judgment for costs or attorneys' fees against the defendant." We do not find any reply to the answer in the record.

The evidence shows that on the same day that the answer was filed the sum of $225 was deposited with the clerk of court by counsel for defendants "as tender to I. L. Burch by Cora V. Graves, to remain in court for claim on note, interest and costs to March 28, 1916." On the trial the plaintiff testified that there had been an error in the calculation of the interest due on the note, and that the amount actually due for interest when suit was commenced was $72 instead of $37, as alleged in the petition, but he also testified that the amount of principal and interest then due was $237.42. The court found that the amount then due was $237.21. And the record shows that during the trial, "plaintiff having testified * * * that the sum of twelve dollars was due in addition to the amount claimed in his petition, the defendants thereupon tendered and paid to the clerk said sum of $12."

Judgment was rendered for the sum of $351.38, the total of the following items: $237.20, principal and interest due at the commencement of the action; $14.18, interest on said sum to December 16, 1916, the date of the judgment; and $100 attorney's fees. Together with the costs of the action taxed at $7.65. And a sale of the mortgaged premises was ordered to satisfy the judgment debt with interest, costs, and expenses and costs of sale. On the date of the judgment also an order staying execution pending appeal was entered, providing, "that if defendants leave the money which is now in the hands of the clerk of this court, to be

tendered and paid upon any judgment which may be rendered or sustained in said cause," and shall give a bond, as provided by law, in the sum of $250, execution shall be stayed pending the appeal. And it appears that a bond was given and approved, as provided in said order, on December 23, 1916.

When it appeared by the evidence that an error had been made in alleging the amount of interest due, plaintiff's counsel moved to amend the petition accordingly, and a motion to amend so as to correctly allege the amount of the interest had been filed on May 6, 1916. There does not appear to have been any order made upon either of these motions; but the court, no doubt, considered the petition as amended, without formal order to that effect, since the judgment included a greater amount of interest than the sum alleged; and when the motion to amend was renewed before the close of the testimony the court stated: "We will proceed. It can be done any time before judgment, or even after judgment."

The fact that $225 was tendered to plaintiff on March 28, 1916, seems to be admitted by the failure to file a reply denying the amount of such tender in the answer. But we think the evidence as to the tender is sufficient to show that said amount was tendered, and that it was intended to fully cover the amount claimed by the petition and summons with costs up to that time, except the attorney's fee claimed. And the fact that it was so intended was explained at the time and understood by the plaintiff, the defendant in error here. The latter testified as to the tender, in substance, that all that he claimed at the time, except for attorney's fees, was tendered, but he could not recall the amount, and that he refused it for the reason that it did not include attorney's fees. There was no evidence of the amount of the court costs at the time of the tender, probably for the reason that no contention was made that the tender was insufficient to cover the same in addition to principal, interest and insurance then claimed, and that the parties understood it to be sufficient for that purpose. But it appears to have been sufficient, exclud-

ing the amount claimed for attorney's fees, for the judgment shows that up to the conclusion of the trial the costs were only $7.65. Thus the sum of $225 tendered exceeded the amount claimed by the petition and summons for principal, interest, insurance, and the court costs up to the time of the judgment, and it was also sufficient to include the interest to the time of the tender, though nothing seems to have been said about that at the time. But it was not sufficient and was not intended to cover any claim or allowance for an attorney's fee.

When the parties entered upon the trial, therefore, the only matter in controversy was the right to recover attorney's fees. And the only contention by plaintiffs in error here is that it was error to allow such fees; that contention being based upon the fact that the debtors were not notified of the assignment and no demand was made upon them before suit was brought, and the fact testified to by Mrs. Graves that after the debt was due and a short time before the assignment of the note and mortgage, Mr. Findlay told her that he did not need the money and that she need not worry about it at all. Mrs. Graves' testimony as to that matter, after stating that she had a conversation with Mr. Findlay after the note was due and shortly before suit was brought, is as follows: "I called him up on the phone and asked him if I should get this money for him. I told him I would borrow it for him. I told him Mr. Graves was out of work, payments were behind. * * * He said that he didn't need the money, and that I needn't worry myself in the least about it. Q. Did he tell you you could have all the time you needed to pay it? A. Yes. Q. Did he say he wouldn't urge you, or bring suit against you; give you to understand that? A. Yes, he just said I needn't worry in the least about it, he wasn't needing money. Q. Did you rely on that? A. I certainly did. Q. For that reason you didn't borrow money and pay it? A. No, but I did go and see about borrowing money. They told me if I needed money, Mr. Findlay pressed me, I could have it."

This evidence does not show a definite extension of the time of payment, nor any consideration necessary to a valid and binding extension suspending the right to maintain an action upon the note or mortgage. (2 Jones on Mort., 7th ed., sec. 1190; 1 Wiltsie on Mort. Forcl., sec. 467. ) And the debt being due and unpaid no previous demand was necessary to authorize a suit to recover the principal and interest due and to foreclose the mortgage to satisfy the same. (3 Jones on Mort., sec. 1471; 1 Wiltsie on Mort. Forcl., sec 49; Henry v. Hodge, 171 Ill. App. 10; Walter v. Dickson, 175 Pa. St. 204, 34 Atl. 646.) Nor, as a general rule, is a previous demand necessary to a recovery of attorney's fees provided for in the note or mortgage where the right to sue thereon has accrued. (Walter v. Dickson, *supra*, Warwick Iron Co. v. Morton, 148 Pa. St. 72, 23 Atl. 1065; Wienke v. Smith (Cal.), 176 Pac. 42.)

But, by the great weight of authority, a provision for attorney's fees in a note or mortgage is a contract of indemnity only—in the nature of a penalty as distinguished from liquidated damages—to compensate the payee or holder for an expense which he has necessarily incurred or become liable for, through some default of the maker or mortgagor; and such fees, even where there is a stipulation for the recovery of a certain or stated amount, are within the equitable control of the court, to allow only such sum as may be reasonable. (3 R. C. L. 896; 8 C. J. 1101; 27 Cyc., 1785-1786; 3 Jones on Mort., 7th ed., sec. 1606; Florence Oil & Ref. Co. v. Hiawatha Oil, G. & Ref. Co., 55 Colo. 378, 135 Pac. 454; Bank v. Coleman, 204 Fed. 24, 122 C. C. A. 338; Daly v. Maitland, 88 Pa. St. 384, 32 Am. Rep. 457; Coley v. Coley, 94 S. C. 386, 77 S. E. 49; Colley v. Summers P. Hdw. Co., 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917D, 375; Triplett v. Sec. Nat. Bank, 121 Va. 189, 92 S. E. 897; Jarvis v. Stoffal, 54 Pa. Super. Ct. 362; Reed v. Catlin, 49 Wis. 686, 6 N. W. 326.) The general principle, under a provision for a certain amount, is well stated by Judge Gabbert in the Colorado case cited as follows:

"We think the correct construction of such a stipulation, which has been announced in many cases, is that a provision for a fixed amount for attorney's fees is an agreement to indemnify the holder against the expenses incurred in the employing of an attorney for the enforcement of collection when the maker fails to keep his agreement, and that when the question is properly raised, regarding the reasonableness of a stipulated amount, the holder can only recover such part thereof as will reimburse him for the reasonable and necessary attorney's fees he has been compelled to pay or has become liable for in enforcing collection of the note."

And, in the exercise of such control and a sound discretion, such fees may be disallowed altogether, under circumstances rendering their recovery inequitable or unconscionable. (8 C. J. 1100, sec. 1434; Reed v. Catlin, *supra;* Williams v. Williams, 117 Wis. 125, 94 N. W. 25; Castle v. Castle, 78 Mich. 298, 44 N. W. 378; Lewis v. Germania Sav. Bank, 99 Pa. St. 86; Moore's App. 110 Pa. St. 433, 1 Atl. 593; Lindley v. Ross, 137 Pa. St. 629, 20 Atl. 944; Nat. S. F. & B. Ass'n v. Waters, 141 Pa. St. 498, 21 Atl. 666; Taylor v. King, 97 S. C. 477, 81 S. E. 172; Barron v. Thompson (S. C.), 97 S. E. 840; Scott v. Carl, 24 Pa. Super. Ct. 460; Haynes v. Halverton, 51 Tex. Civ. App. 228, 111 S. W. 166; Bank v. Coleman, *supra;* Fourth Nat. Bank v. Stahlman, 132 Tenn. 367, 178 S. W. 942; Enid C. Inv. Co. v. Porter, 45 Okla. 406, 145 Pac. 805.)

In Lewis v. Germania Savings Bank, *supra,* a defense was interposed that there had been an agreement extending the time for payment, and it was also claimed that because of the agreement to give further time the plaintiff was not entitled to recover attorney's fees. After stating that there was nothing substantial in the alleged agreement to give further time, for the reason that no sufficient consideration for such agreement was disclosed, the court referred to the objection to the recovery of attorney's fees as the only matter about which there could be any doubt, and stated the fact

upon which the objection was based and the principle to be applied as follows:

"It is alleged by the plaintiff in error that prior to June 4th he called at the bank and offered to pay the interest falling due on that day, and also the principal debt, but was informed by the proper officer of the bank that 'they did not need the money, and to let it stand until the Butler county matter was disposed of,' etc., and that shortly afterwards, without making any request or demand for payment of principal or interest, suit was brought on the mortgage. It is contended that under the circumstances detailed in the affidavits of defense, as to the agreement to give further time, the plaintiff below was not entitled to recover attorney's commissions. We think this would be so if the defendant, even after suit was brought, had been reasonably prompt in paying, or tendering payment of the debt and interest secured by the mortgage. In Daly v. Maitland, 7 Norris (88 Pa. St.) 384, it is held that while stipulations for the payment of attorney's commissions in mortgages and other securities are valid, they are, nevertheless, subject to the equitable control of the court, and will be enforced only to the extent of compensating the plaintiff for reasonable and necessary expenses of collection. Applying this doctrine to the case of a debtor who has been misled by his creditor and thrown off his guard in the manner the plaintiff in error alleges he was, it would not be an unreasonable exercise of the equitable power of the court to refuse any allowance for attorney's commissions; but to justify such action on the part of the court, the defendant should attest his sincerity and good faith by promptly paying or tendering the amount of debt and interest, exclusive of commissions."

And because there had not been a tender in that case of the amount of the debt and interest, but the defendant undertook to defend against a part of the plaintiff's claim, and failed to pay or tender the residue, it was held that he was not entitled to equitable relief from the stipulation for attorney's commissions. In Moore's Appeal, *supra,* judgment had been entered upon a judgment note before it fell due

and the plaintiff, upon the maturity of the note, refused a tender of the full amount due, excluding attorney's commissions. While the case is not in point on the facts, it is important because of a reference in the opinion to a former case apparently not published in the official reports. The court said:

"To permit such a practice as this, where the defendant offers to pay all that is due at the maturity of the obligation, would be sanctioning an intolerable and unreasonable oppression. * * * We said in Imler v. Imler, 13 Norris, on p. 375: 'It was never intended, nor can we permit such a clause to be used to compel a debtor to pay attorney's commissions where the latter does not dispute the claim and pays at maturity.' In Johnson v. Marsh, 42 Leg. Int., 92, we refused to allow commissions even after execution issued. because there was no satisfactory evidence of a demand for payment before entering judgment, although the debt had passed maturity." It was explained in Imler v. Imler, that the intention of stipulations for attorney's fees in instruments for the payment of money is that the creditor shall be indemnified for his reasonable counsel fees, where it becomes necessary to employ counsel to collect the money.

In a later case in the same court, Lindley v. Rose, *supra,* where the fees were disallowed, it appeared that there had been some negotiation between the parties for making a partial payment before the entry of judgment authorized by the note, and the defendants claimed that the plaintiff had agreed when the money was borrowed that judgment should not be entered until they had notice and an opportunity to pay, if payment was required. Whether the fact of such agreement was established or not does not clearly appear; but the trial court held that demand was necessary before entry of judgment to authorize a recovery of the commissions, and that conclusion, upon the facts of the case, was sustained by the Supreme Court, that court saying: "We think the learned judge below was right in holding, under the facts in this case, that there must be a demand and refusal to pay, before the defendants in the judgment can be

subjected to the payment of attorney's commissions. This was the rule laid down in Johnson v. Marsh, 21 W. N. 570, where it was said: 'In the absence of satisfactory evidence of a demand for payment before entering the judgment and issuing the execution, we think the necessity of resorting to the services of an attorney for collecting the money does not appear, and, without proof of such necessity, the defendants ought not to be subjected to the payment of the commissions'."

In National S. F. & B. Ass'n v. Waters, *supra,* it appeared that the mortgage debtor, upon receiving information that the mortgage was due, and that payment had been demanded, requested a statement of the amount due, and was given such a statement concluding with the words, "Good only until September 11, 1890"; and that relying upon said words the debtor, on the date stated, paid the amount of the debt, with interest, taking a receipt therefor reciting that the costs were to be adjudicated between the parties. It was held that the trial court properly entered judgment for the office costs only, excluding attorney's commissions, the court saying: "The services of the latter were not needed for the collection of the money. Indeed, no object is apparent for issuing the *scire facias* upon the mortgage, except to create a plausible pretext for a charge of attorney's commissions. Under the statement furnished by the plaintiff company to the defendants, on August 30th, the latter were entitled, under any fair and reasonable construction thereof, to pay the money at any time on or before September 11th. The issuing of a *scire facias* between those dates, so far as we can gather from the record, was unnecessary, as well as a breach of faith. It certainly does not entitle the plaintiff to claim an attorney's commission."

The facts in the Wisconsin case of Williams v. Williams, *supra,* were that the action to foreclose a mortgage was commenced on January 29, 1902, and on the following day the defendant deposited in court an amount sufficient to pay the amount demanded, excluding costs and solicitor's fee, and moved to dismiss without costs, alleging that on Jan-

uary 28th the mortgage was recorded in the name of and belonged to the plaintiff's attorney, on which day defendant's attorney offered to pay the same to said holder, and upon it appearing that the latter was attempting to evade a payment, defendant tendered the full amount of the mortgage with interest, which the said holder absolutely refused to receive, or to receive any sum whatever in payment, that said holder then immediately transferred the mortgage to plaintiff and brought suit upon it. It was asserted also in support of the motion to dismiss that the refusal of payment when tendered, and the immediate commencement of the suit was intended to harass and distress the defendant, and impose unnecessary costs and expenses. The amount deposited in court was ordered to be paid to plaintiff in full of the amount due on the mortgage, and the cause was dismissed without costs to either party. That action of the trial court was affirmed on appeal, the Supreme Court saying:

"The record, however, presents no attempt to set up the previous tender of the mortgage debt as a defense to the action, but merely an appeal to the court to dismiss the action because continuance of the litigation would be wholly needless; the defendants having performed all that plaintiff sought to enforce by her suit, namely, paid the full amount demanded by the complaint. That courts have inherent power to protect themselves against fictitious and futile litigation is unquestionable. (Citing cases.)   *   *   * Appellant further urges, however, that she was entitled to the costs already incurred; and, since the deposit of money and motion to dismiss were predicated upon assumption that she was within her strict right in commencing action, that contention might be unanswerable in action at law, where costs are matter of strict statutory right. This, however, is a suit in equity, wherein allowance of costs is discretionary, at least upon dismissal.   *   *   *   In the present case we are satisfied that the conduct of plaintiff and her attorney was such as to fully justify the withholding of costs from her. Confessedly, the amount due upon the mortgage was

offered her attorney before suit, when he apparently owned it; and he was notified that pay was ready at any time, whether a legal tender was made or not. His only excuse for nonacceptance was that he was engaged in preparing a lengthy bill of exceptions and could not spare the time to look up the mortgage; yet he did take time immediately not only to find it, but to formally transfer it to plaintiff, and to prepare the voluminous complaint and other papers necessary for commencing this foreclosure action, which he caused to be served with all haste, instead of notifying defendants' attorney that he would accept payment. The only motive conceivable for such conduct is not one which commends itself to courts of equity or invites their favors."

It appeared in the Texas case cited, Hayes v. Halverton, which was a suit upon vendor's lien notes, that the defendant had gone to plaintiff's office to pay before suit was brought but found that the latter was out of the state, that he then went to the office of another party, understanding that the latter was collecting money for the plaintiff, who told the defendant that he did not have the notes for collection or in his possession and knew nothing about them; and defendant testified that he had been ready and willing to pay the notes when presented, but did not learn of the plaintiff's return until the suit was commenced, and that on the next day he went to the plaintiff offering to pay the notes and interest, but the same was refused unless attorney's fees were also paid; the plaintiff also telling the defendant that he had sued him without giving him notice for the reason that the defendant had testified against him in a certain suit. On appearance day the defendant again tendered the principal and interest. It was held that the recovery of the stipulated attorney's fees was properly denied.

In the South Carolina case of Barron v. Thompson, *supra,* it appeared that a second note and mortgage had been executed and delivered to take the place of a note and mortgage previously executed, but the receivers of the payee corporation, finding the first note and mortgage among the papers of the corporation, brought suit to foreclose that

mortgage, and, upon being apprised of the fact that a second note and mortgage had been given to take it up, agreed to, and did, deliver up the first for cancellation, so as to permit another loan to be made to pay off the second according to an arrangement made with the bank to which said second note and mortgage had been assigned. But shortly after that the receivers and their attorney paid said note and mortgage off at the bank with receivership funds, and then refused to accept payment from the defendant unless he would pay attorney's fees. Defendant refusing to pay such fees tendered the amount due in full settlement, which was refused, and foreclosure proceedings were brought on the note and mortgage so acquired by the receivers. The amount of the tender was then paid into court. It was held upon such facts that there was no necessity for the suit and that plaintiffs were not entitled to attorney's fees.

Now, in the case at bar, it is clear that Mrs. Graves was lulled into a sense of security by Mr. Findlay's stating to her, when she was proposing to borrow the money to pay the debt, that he was not needing the money and she need not worry about it at all; and that her inaction in the matter beyond ascertaining that she could obtain the money if needed was caused thereby. And we think she had a right to believe from what Findlay said that no suit would be brought or legal proceedings taken to collect the note or foreclose the mortgage without further notice giving an opportunity for payment. Had Findlay remained the owner of the note and mortgage and brought the suit when it was brought, without previous demand or notice, it would certainly have been a breach of faith on his part. And as the mortgage is not a negotiable instrument and the note was overdue when purchased by the plaintiff, the latter took them subject to all equities existing at the time of the assignment, if not indeed at the time the defendants thereafter learned of the assignment. (Castle v. Castle, 78 Mich. 298, 44 N. W. 378.)

But it further appears that the recovery of this debt was not the sole object of the suit, for as shown by the plaintiff's testimony it was brought to compel a settlement also of another matter between the plaintiff and Mr. Graves. Explaining his purpose in buying the note and mortgage and bringing suit, the plaintiff testified that he had a note against Mr. Graves upon which he had secured a judgment; that Graves had filed a petition in bankruptcy to evade that note; that on the basis of certain statements of Graves to the referee in bankruptcy "we claimed an interest on this property, and so I, in order to eliminate any one else having an interest in the property except me and the people that own it, I bought that note and mortgage, so that when it came to any proceedings in the matter there would be no one else it would be necessary to call upon at all"; that it was done so that he might be in a position to know the interest of Mr. Graves in this property and how he acquired that interest. And he testified directly that the note was bought to compel a settlement of the other matter, and that the suit was brought to compel a settlement of both matters. He testified also that after the suit was brought he had a conversation with defendants in which he proposed a settlement of both matters, and on his own responsibility, but without authority of his attorney, told them that if both matters were settled as proposed the total attorney's fees would be only $50.00.

The note and mortgage are signed by both Mr. and Mrs. Graves, but the latter's name is first signed to both, and the parties executing the mortgage are described therein as follows: "Cora V. Graves, and Karl DeF. Graves, her husband," seeming to indicate that Mrs. Graves is the principal debtor and at least the record owner of the property.

A sufficient amount having been promptly tendered after suit was brought to cover all that was claimed by the petition and summons and the costs and interest up to the time of the tender, excluding attorney's fees, and the tender having been kept good by a deposit of the amount with the clerk of the court, we are of the opinion that the allowance of any

amount for attorney's fees is inequitable, and that it was error to include any amount therefor in the judgment. The defendants did not then know of the mistake in the amount of the interest due, but relied upon the averment of the petition as to the amount. The computation of interest because of the many monthly payments, some of which were not made promptly, was a complicated matter, and the mistake shown by the evidence was not chargeable to the defendants. Mrs. Graves testified that she had been informed before suit at or about the time of her conversation with Mr. Findlay that the balance of principal due was $171.00 or $174.00, but that she did not know the amount of the interest. When it appeared that a mistake had been made an additional amount supposed to be sufficient to cover the difference was tendered and also deposited with the clerk. That tender and deposit seems to have lacked twenty-one cents to make it cover the exact amount of the difference, for the amount shown to have been due of principal and interest, upon curing the mistake in interest, was $237.21, but that it was not sufficient does not appear to have been suggested upon the trial. By the judgment interest was allowed upon the entire amount due at the commencement of the action to the date of judgment. The defendants should not be required to pay interest upon the amount originally tendered and deposited in court, viz: $225.00.

The cause will be remanded with directions to modify the judgment by excluding the amount of the attorney's fees allowed thereby, and that portion of the interest allowed from the commencement of the action equalling the interest upon the sum of $225.00, the amount of the original tender.

BEARD, C. J., concurs.

BLYDENBURGH, J., being ill, did not participate in the decision.